Thank you, Your Honor. May it please the Court, Sidney Tribe here on behalf of the appellant Thomas Boothe. What did you say your name was? Sidney Tribe. Thanks. And I pardon my voice, Your Honor. I'm a little under the weather, so I'll try to make sure. Normally me being loud is not a problem. The first issue I want to address before I get to the heart of the due process issues are this Court's concerns with jurisdiction that were raised in the order that was issued a few weeks ago. There are a couple of points I want to make on this matter. First of all, final judgment has been entered in this case, and thus, if this Court would like us to file an amended notice of appeal, if there are any concerns about jurisdiction in advance of the final judgment having been entered in the underlying case, they would be resolved by that final judgment being entered. Second, however, on the actual issue of the contempt order being appealable, unlike in Cunningham and in Stanley v. Woodford, which this Court mentioned in its order, those cases, in fact, involved orders of sanctions for violations of the discovery rules under CR 37. They were not orders of contempt. In particular, in Cunningham, the Supreme Court directly addressed that issue and said that this was not an order of contempt, whereas in this case, and you can see the order there at ER 2, the order is, in fact, an order of contempt, and in ER 1, you can see the judgment, which is, in fact, a final judgment from which there is nothing left for the Court to do but enforce its order. We do, of course, concede that the proceedings between Mr. Booth's client and the city did continue to proceed. However, this contempt proceeding and contempt order were completely separate from that proceeding. They were not intertwined with that proceeding, and as such, that contempt order was a final appealable order. Well, now, we need to separate out the civil and criminal aspects, do we not? Yes. Well, it's complicated here because you have a problem of a contempt charge that is clearly criminal and was framed. I have trouble with that. I can't figure out exactly what's in front of us. When I look at the order to show cause, it basically gives notice and an opportunity to be heard on whether the lawyer engaged in felonious misconduct. And then when I look at what the judge did, well, I'm not clear on what he did and why. Let me follow that up by saying, did he make express findings of fact with respect to that? He made no express findings of fact. In fact, Your Honor, the order of contempt did not ever appear. There was never any actual order filed. All you have is an oral ruling on the record, and that's from the hearing on the 12th, in which he said he was finding my clients in contempt for the behavior, the out-of-court behavior he said was engaged in between himself and Ms. Quinn. So it's purely based on talking to Quinn in the hallway? Yes. That's the contempt order. However, he also stated that he was and he stated this actually in advance of the hearing. He said at the beginning of the hearing, after my client had prepared to defend himself against these very serious charges of witness tampering that the court said were raised in the juror notes, at the start of the hearing, the court and the prosecutor, which in this case was also Mr. Booth's opponent, stated, well, we've decided that this isn't, that doesn't really rise to the level of contempt. It's probably sanctionable, but it's not contempt. And then at the end of the hearing, the judge said, and this is at, I believe, ER 199, the judge said well, I'm holding you in contempt for the behavior with Ms. Quinn. I'm sanctioning you for the what I witnessed in the jury notes, even though the court The facial expressions. For the facial expressions, yes. And essentially when trial counsel for defense counsel for Mr. Booth attempted to clarify that in fact the mistrial was not caused in any way by what had gone on with Ms. Quinn because it was outside of the courtroom, the judge said, well, yes, but the mistrial was accomplished by the juror notes. He said the juror notes tainted, showed that the jury was tainted. And then he said that's not fair to Mr. Hernandez, which is also a little And if Mr. Hernandez had a problem with the jurors being tainted against his counsel, it was certainly within his purview to say I don't care, I want to keep this counsel. Anyway, this is kind of a different question from, it's neither the jurisdictional question nor the merits question, but it basically says it's a different problem after you jump all of that that says that the district court didn't make the requisite findings on either, for either one because he didn't find bad faith on the sanctions and he didn't find, and he didn't award the fees for the contempt. Or maybe, we have to ask essentially. Right, exactly. You only have his oral findings to go on. And what he said was it's not quite bad faith. I believe the city is trying to argue that that meets the standard of being tantamount to bad faith, but he never made a finding as far as that's concerned. Again, we don't have a written order here. So just to back up a minute, I don't understand exactly what your due process claim is and what's left of it. The due process claim, and this is actually. I'm not claiming it was criminal. Our argument is that when the charges are criminal, regardless of whether the ultimate sanction is not criminal, then you are entitled to criminal process. Now, that's not to say that my client would be looking forward to having a full-blown criminal jury trial, but he certainly would like to be exonerated. But our principal argument on appeal is that he was entitled to the full protection of the Federal Rules of Civil Procedure, particularly the right. Civil due process, but that doesn't mean he's entitled to rule every chart of the discovery rules. But a civil action is governed by the Federal Rules of Civil Procedure, and certainly it could be argued that there are certain parts of those rules that the court has discretion as to whether or not it wants to allow the parties to engage in. But it does not have discretion under Federal Rule 30 to deny a deposition of a central fact witness in the case. I mean, this case basically came down. I'm sorry? Who did not allow Quinn to be deposed, and why? I didn't understand that. So the judge, my client moved to have her be subjected to a deposition. The city argued that she should not have to be submitted to a deposition because Mr. Booth was only entitled to notice an opportunity to be heard, and furthermore, that it would be another chance, in the city's words, to abuse Ms. Quinn, which of course. What did the judge say? The judge ordered that she would not be deposed. And that is at. What would the deposition have been about? The deposition would have been about, would have been about delving into the, because again, the question here as far as the contempt order was that there was a conversation that occurred between these two people, and she claimed some things were said, and Mr. Booth claimed that other things, innocuous things were said. And the deposition would have been a chance to delve into those questions and to essentially what happened was the deposition had to occur on the stand, and there was no chance to compare. I'm trying to find out something in particular, more concrete. At a deposition, you either try to find out some things you don't know, and you know what it is you're trying to find out, or, and, you try to perpetuate things that you know, that you do know, and that you know the witness will say. And I'm trying to figure out what it is that Booth wanted Quinn to say or wanted to find out from Quinn at the deposition. Essentially, he wanted to find out what the nature of her claim was, that this was somehow intimidation of her. She had a pretty good idea. She wrote a letter, but again, I mean, under the Federal Rules of Civil Procedure, that's not sufficient. It's not a discretionary decision. You don't even have to go to the judge. FRCP 30 says without permission of the court, without leave of the court, you may depose a witness. So, the purpose of the deposition. And if it's civil contempt, you get to do depositions. If it's criminal contempt, you don't. Yes. If it is indirect civil contempt, that's correct. And that's Bagwell. Essentially. And she was a witness, and Booth wanted to confront her, ask her, I'm still not clear on this. Well, I'm sorry, not Booth, Booth's counsel. I correct my, I misstated. Booth's counsel wanted to ask her questions, and I'm trying to figure out exactly what the questions would be. Are they who said what to whom at the conversation in the hallway, or what? Yes, that's right. What one says in a deposition may not exactly align with what writes down in a letter that one's trying to get. You're giving me arguments for taking depositions, and I'm asking a different question. I don't need justification and the general reason why lawyers take depositions. I want to know what you wanted to ask at deposition. What, what did you, what do you think that she said? Let's imagine. Is it possible, for example, is it, Your Honor, is it possible that, Ms. Quinn, that you misperceived or misunderstood what Mr. Booth said to you in the hallway? Have you had a lot of past personal conversations with Mr. Booth? Do you have a longstanding, cordial, interpersonal relationship with Mr. Booth? Is there a harmless error problem here? I mean, you asked all those questions. I mean, you had clues. It wasn't like you were going blind because she wrote a letter. So you knew what the target was, and then you asked all those questions. There's not harmless error, however, because there were other due process violations besides simply the question of whether or not he was supposed. All right. What are they? There was no unbiased tribunal. If you look at the Supreme Court's decision in Mayberry, the court said even when it's essentially direct contempt and the court witnessed all of this behavior, if there is a significant risk that there might be bias on the part of the decision maker, the decision maker should recuse and allow the contempt charge to be heard by an unbiased tribunal. Now, that's in a case where all you have a right to is notice and opportunity to be heard, which is exactly what the city is arguing Mr. Booth was entitled to. Counsel, there are two issues. There are two allegations of misconduct here. One is the witness tampering, and the other is the facial expressions. Does the same standard apply with respect to both of those? Well, it's difficult, Your Honor, because, again, you have a final order here, and this is the order on attorney fees, which is the only written order we have, that says this is an order finding him in contempt. However, you have the verbal transcript, which says, well, I'm not finding you in contempt. I'm only sanctioning you, and it doesn't really say under what authority. But certainly there's no question, and this is right out of F.J. Hanshaw, when you have a question of there having been two different standards, as far as the charge for which there's no question he's entitled to the civil procedural protections, then he has a right to have that vacated and have that reheard. But, again, even if you're just talking about notice and opportunity to be heard, even if it's a question of just the sanctions, he does have the right. It's a fundamental constitutional right. Was there an allocation with respect to the total dollar amount? I think it was $145,000. Was there an allocation as between the two allegations of misconduct? No. What the court said was the entire $145,000 was for the facial expressions that the jurors pointed out in their notes. Well, he said that, but then he also said he wasn't finding him in contempt for that. Right. And then he says he's finding him contempt, and that's why he's opposing the fees. Exactly. So it's fairly confusing, but one possibility is that he's now saying, I am opposing the fees for the contempt. Or he's changing his mind about there not being contempt for the fees. I think this is indicative of how confused this entire process was and what a danger there is of allowing this kind of proceeding to occur, if I may say somewhat haphazardly. And there is another issue at stake here, which is that Mr. Booth's concern is not simply with this question of paying the attorney fees, although he does not feel that he should have been required to pay the attorney fees, based on the record. But having been found in contempt in this proceeding in which, because it was a contempt proceeding, was a standard of clear and convincing evidence, if there were a subsequent bar proceeding brought against him, he would be collaterally stopped from arguing this and from having his full due process in that proceeding. So this goes beyond whether or not the trial judge decided the fees, which is a little minutiae, but is that the fees that went to the mistrial, presumably the only link up, or there's a good argument that the only link up is to the facial expressions. But there were also a substantial amount of fees for the contempt hearing. That's correct. And I presume that would be appropriate with regard to the actual contempt. And he didn't say that he wasn't doing that. He didn't say that. He said that essentially having had to have paid the fees for the mistrial was enough of a punishment or enough of a consequence. I mean, in fact, it says fees for the contempt hearing and for post-contempt hearing. Right. That's right. But, again, at the start of the hearing, this was a contempt hearing about the juror notes and the facial expressions. It was only when the court essentially said, well, I'm not going to have this be a contempt proceeding about the facial expressions, did it then suddenly just become a question of applying this authority to impose these sanctions. But, again, you're right, Your Honor, it's confusing. There were certainly a number of problems with not just the proceeding but the resulting written orders. And we do believe that there was a fundamental due process violation here and that the court's decision should be released. Thank you, Counsel. Your time has expired. We'll hear from the other side. Good morning, Your Honor. May it please the Court. My name is Bob Christie. I'm the attorney for the City of Vancouver. On the jurisdiction of the court. Can you straighten out something for me? Yes, Your Honor. This Quinn, it looked to me, now this was a very hard record to read, so I could be making a lot of mistakes. It looked to me like Booth had a conversation with Quinn in the hall. Quinn was at that time the city's lawyer. She was chief counsel for the city. She had joined other counsel to assist her, but she remained the city's counsel of record on the case. I could not for the life of me figure out what's wrong with talking to opposing counsel in the hall. Now, the theory seems to be that it's wrong because he knows that she's going to be the city's witness. I had trouble figuring that out, too, because every lawyer knows it's unethical to be the lawyer in a case where you're going to have to be a witness on a substantive matter. So instead of Quinn getting in trouble for being both lawyer and witness for her client, Booth gets in trouble for talking to opposing counsel. I didn't understand it. I must be missing something. You are, Your Honor, and I can help you. Quinn, who is here, was originally counsel of record in the case, never formally filed a withdrawal, but was not active as a participant, as a lawyer prosecuting the case or defending the case in any way. Did she hire and supervise outside counsel? First of all, there was another lawyer in her firm in the city attorney's office that handled it. There was an outside firm, and then our firm was brought in as lead trial counsel. Are there any ethical proceedings pending against Quinn? No, Your Honor, and for this reason. Ms. Quinn was deposed in the underlying case as a witness. She was the key lawyer involved in the city attorney's office in putting together the response to the EEOC complaint. Why wouldn't she have withdrawn as counsel, then? I think it was a technical oversight in her not having filed a formal withdrawal, but the court knew and everyone knew that she was a party representative. She sat with us at counsel table, was introduced as the party representative. She was listed in the pretrial order as a witness in the court. I've never seen anybody. I don't know what party representative means except when, oh, a policeman sits next to a prosecutor or a CEO sits next to a lawyer for a corporation. In this case, it was a decision about who would be the representative for the city that would sit with us and would therefore, even though she was a witness, not be excluded from the remaining proceedings. So she's lawyer for the city. She's witness for the city. The exclusionary rule that keeps witnesses from hearing other witnesses' testimony is not invoked against her because she's also the city's party representative at counsel table. And she is a witness and a testifying witness by virtue of her role in the underlying EEOC process and that's why she was a key witness at trial. But in the end, I didn't understand the contempt to be that he talked to her. I mean, that seemed to be in the air, but it was more what he said to her. It was absolutely what he said to her, and that's very clear from her testifying, her version of events at the hearing, as well as from her letter. Kagan. Is it your position that that was somehow connected up to the mistrial? Actually, Your Honor, I think it is not. And the judge's decision on this is very clear. His articulation of his grounds for holding what he did, I submit, is very clearly set forth in the Vadum Report of Proceedings from the October 12 hearing, if you look at pages 198 through 200. Subsequent to that hearing, he ---- He made a bad faith finding with respect to contempt as it related to Ms. Quinn. Right. He did not make a specific bad faith finding with respect to ---- But you just said that wasn't the reason for the mistrial, so it wasn't the basis for the fees. That is correct, and this ---- Therefore, we're getting fees on a basis that was illegitimate or at least wasn't fleshed out because there's no bad faith finding, and we're not getting fees with regard to the contempt, even if the contempt is a valid contempt. Your Honor, they have ---- I'm sorry. I don't mean to interrupt your question. Okay. They have not raised as an issue in this appeal any challenge to the trial court's decision to grant a mistrial. No, no. My understanding is what they're raising a challenge to is the provision of compensatory sanctions, which was not because there was no contempt finding on the facial expressions and there was no bad faith finding that would support the compensatory damages. Isn't that right? No, it's not right. Why? Because of the court's ability to, one, grant a mistrial based on misconduct on the part of Mr. Booth as reflected in the juror notes having previously been warned and resulting in the wasting of time. That is exactly what ---- Except that there still has to be a bad faith finding. I submit that there does not have to be a specific bad faith finding. This was not a matter under 1297. I do not believe there's a requirement that he specifically find bad faith. You said in your brief that there did have to be one, but you sort of suggested there was one. And now that we can't find one, now you're saying there doesn't have to be one. There is a very specific bad faith finding with respect to his conduct directed towards Ms. Quinn, which was the basis for his civil contempt. But you're now also saying that that was not the basis for the fees. That is very clear from the judge's rulings. He said very clearly on page ---- So you have a legal disagreement as to whether there has to be a bad faith finding in order to award the fees for a noncontempt sanction. Is that right? And you're saying there was a finding. No, he's not. There was not a finding of bad faith as it related to the facial expressions, Your Honor. That was ---- Therefore, we should reverse. Should we not? No, you should not. He found that there was time wasting, that there was vexatious conduct, and that warranted the granting of a mistrial. The mistrial was not being challenged on appeal. Was the mistrial ---- The mistrial was about the making faces and not about talking to opposing counsel in the hall, right? That is ultimately exactly what the Court found. But the making faces, the finding is that it was not on purpose. No, he didn't find that at all. Said no bad faith, no intent? He didn't say no intent. He said it doesn't constitute bad faith. I think is exactly ---- He said I have to find bad faith, but I'm not finding bad faith. That's what I understood him to say. Well, you know, I can't put words in Judge Layton's mouth. We can only go on what's on his record. I know, and that's what I understood him to say. You can't figure it out. Well, what words did he ---- What words he used exactly, Your Honor, set forth on page 199 and 200 of the verbatim report of proceedings. And what he said specifically is that, as the Court knows, he says, I won't get into his head. He then says, and this is beginning at line 5, but it does have a deleterious effect in the judicial process. Line 5 what page? This is at page 200 beginning at line 5. I got it. Okay. And he will be sanctioned for wasting the time in the proceedings. Wasting time in a proceedings is a basis for awarding compensatory attorney's fees under numerous authorities, and I would cite the Court to both ---- But making faces isn't wasting time. Making faces is not a waste of time. This is in the context of ---- That would be a wrong thing to do. Well, it was more than that in this case. These were witnesses that Mr. Booth was examining. Actually, I was doing the cross-examination that had been identified in the record as former clients of his from another proceeding. And this was ---- But the judge specifically did not find that he was coaching the witness. He specifically did not find that. He found that he was actively ---- They thought he was, but they didn't find that he was doing it and that he actually was doing it. What he decided to do was to recognize that the jurors who spoke up specifically about what they perceived as being misconduct in the process were now tainted in a way that would prevent them from fairly ---- But if he ---- let's suppose his whole story was completely correct, which the judge never found was not, i.e., he had some medical problem and he was grimacing with pain and they mistook it as being that he is mouthing words and coaching the witness. Is that a basis for sanctions of whatever, $180,000 or whatever it is in fees? Yes, it is, Your Honor. Why? It is because, first of all, the judge found he did not accept, and that's clear from his findings, that his conduct was the result of his medical condition. Where's that? Well, as close as I can come, Your Honor, when he articulates his findings, it's on pages 199 and 200 of the record. There's some over on to page 201. Okay. I would note and ---- Where is it? Where does he find that his story wasn't true as opposed to it just, you know, it screwed the whole trial up and I had to declare a mistrial. He probably did have to declare a mistrial, but what does that have to do with whether there should be sanctions against Mr. Booth? Well, the act of declaring a mistrial necessarily invalidated three days of trial and all the preparation associated with that trial. The court found it appropriate to award compensatory attorney's fees. And this is attributable entirely to the facial expressions? Is that your argument? Well, that's what ---- Or is part of it the incident with alleged witness tampering? I have to go on what the court articulated. Well, the court is very, very muddy, if I might say so. It's not clear to me what he's relying on. As I understood what the court ---- And I'm not even sure that it's appropriate to assert that the entire 145,000 was allocated entirely to the facial expressions. I think it's very fair to say that it was not all allocated, and that's clear from his final order, because he looked at the amount spent in the contempt process itself. That totaled about $64,000, and he awarded that based obviously upon the finding of contempt. In my belief, that's ---- That was talking to Quinn? That's correct, Your Honor. Talking to opposing counsel. Well, it goes far beyond that in fairness, Your Honor. It's not just having a conversation with opposing counsel. If you look at the record, it's interjecting personal rumors that he had heard about her, personal innuendo in throwing ---- well, putting in her face comments that had allegedly been made about her having an affair with an individual that was previously associated with the city. He stood in a threatening manner to her, both physically and the way he talked to her. He did it at a point in time ---- What you're saying is he was rude to opposing counsel. More than that. Way more than that. But it didn't ---- It amounted to, as the judge found, and that is a finding which is reviewed under an abusive discretion standard, a specific finding that everything he did was designed to intimidate her and prevent her from ---- Everything he did commit a felony. Well, my personal opinion, yes. I'm not the one that will ultimately prosecute him because I have no such authority. Now, did he get to cross-examine Quinn at his hearing? Yes, he did. And the answer to your question and to Judge Berzin's question, it is completely harmless. Every question that he wanted to pose to Ms. Quinn was posed on the part of his attorneys at the hearing. He had notice of the hearing. He was given four months to prepare for it. The court did not permit him to have a separate pre-hearing deposition of Ms. Quinn, but there were no limits on what he could ask on the exact same subject. What you're saying, and it sounds like you think the judge's decision was based on this, was threatening to reveal some sexual affair that Quinn had was in effect to blackmail her and to ---- I'm not sure what. Well, it was to intimidate her. To do what? To make her feel uncomfortable. I guess if she was counsel. She wasn't counsel. At that point, she's a witness, and she's going to be told to testify. What was the resolution? I thought the judge agreed quite definitively with Mr. Booth that at the point that this happened, he had ruled that she wasn't going to be a witness. Oh, that's absolutely not consistent with the record at all, Your Honor. I thought the judge specifically agreed with that. No, he didn't. What he said, and he flip-flopped on this, he initially said that he was going to admit that he was not going to admit into evidence the EEOC's determination of probable cause letter. Right. He later ---- When later? Well, he actually announced the morning that he declared a mistrial that he had written ---- Which was before or after this conversation? Well, the conversation with Ms. Quinn was on Tuesday before he had decided it was going to come in. She was going to testify ---- So at the point that this was happening, there was a definitive determination that it wasn't going to come in. I would say that's correct. But there was absolutely a definitive determination that Ms. Quinn was a witness who was going to be called to testify at trial. About what? She had a host of interactions with other people associated with this case. I thought she was going to be called to testify about what the city did in response to the EEOC letter, which at that point was not coming in. That would have been part of her testimony. There was ---- her testimony was much broader than that. In fact, we just finished the trial and her testimony was broader than that. It was substantially broader than that. She had involvement for a full year in the underlying investigative efforts. Was she a lawyer and witness for her client in the second trial? She was not a lawyer. She is a lawyer. She was not in any way, sense at all, a lawyer. Was she the counsel of record for the city in the second trial? No, I was, Your Honor. Just as I was in the initial proceeding. When did Booth get to depose Quinn? He never deposed her. Oh, he deposed her on factual matters, I think, about two years before the trial. I would think the date is sometime in 2011. Oh, on the mistrial. I remember the judge saying something about how Ninth Circuit law let the EEOC letter in, but he wasn't going to follow it, something like that? That's what he said initially, and that's when he changed his mind, and he had written an order that came out the day he declared a mistrial that changed that, and he was going to permit that letter to come in. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: O'scannlain, Kleinfeld, Berzon